IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRANSWOOD CARRIERS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-cv-383 |
| | § | |
| GEMINI INSURANCE COMPANY | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Transwood Carriers, Inc. ("Transwood") brings this Complaint for Declaratory Relief against Defendant Gemini Insurance Company ("Gemini"), and in support, states as follows:

### INTRODUCTION

1. Transwood brings this action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 *et seq.*, to obtain a declaration of its rights under an insurance policy issued by Gemini for reimbursement of settlement amounts Transwood paid in connection with a lawsuit filed in the 218th Judicial District Court of La Salle County, Texas, Case No. 17-04-00078-CVL, styled *Beverly A. Allen v. FTS International, Inc.; FTS International Services, LLC; EP Energy E&P Company, LP; Transwood Carriers; Transwood Carriers, Inc; Transwood Logistics, Inc; Hugo Castelan; and J&R Valley Oilfield Services, Inc.*

### PARTIES

2. Plaintiff Transwood Carriers, Inc. is a transportation carrier company organized and existing under the laws of the State of Nebraska, with its principal place of business in Nebraska.

3. Upon information and belief, Defendant Gemini Insurance Company is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Connecticut. Gemini is authorized to and does conduct insurance business in the State of Texas as a surplus lines insurer. Gemini has designated the Superintendent, Commissioner or Director of Insurance as its agent for service of process. Pursuant to the Policy, Gemini agreed that service of process may be made upon Assistant Vice President - Claims, Berkley Oil & Gas Specialty Services, LLC, 10375 Richmond Avenue, Suite 1900, Houston, Texas 77042.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over these parties and this dispute pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interests and costs. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2).

## FACTS

### The Master Service Agreement

4. On November 1, 2012, Transwood and EP Energy E&P Company ("EP Energy") entered into a Master Service Agreement ("MSA"). Pursuant to the MSA, Transwood was to provide "dedicated transportation services" for certain of EP Energy's oil and gas operations.

5. The MSA between EP Energy (the "Company" as defined in the MSA) and Transwood (the "Contractor" as defined in the MSA) contains mutual indemnity provisions covering "all Claims for bodily injury to or death of" the indemnifying party's employees.[1]

6. The determining factor as to which provision applies in a particular case depends on whether the person alleged to have been injured is an employee of EP Energy or an

---

[1] "Contractor," as defined in the MSA, also agreed to indemnify Company Group for bodily injury claims brought by Contractor's invitees.

employee/invitee of Transwood. If the injured person is considered an employee of EP Energy, then EP Energy owes a duty to indemnify Transwood.

7. Specifically, with respect to EP Energy's indemnification obligations, the MSA provides that EP Energy will release, defend, indemnify, and hold harmless Transwood from all claims for bodily injury to or death of any of EP Energy's employees arising out of the performance or subject matter of the MSA as follows:

> c. **Company's Indemnification**. Company hereby agrees to RELEASE, DEFEND, INDEMNIFY and HOLD HARMLESS Contractor Group from and against any and all Claims for bodily injury to or death of any of Company's employees, or damage to property of Company (but excluding Company property not at the worksite), arising out of or related, whether directly or indirectly, to: (i) the performance or subject matter of this Agreement; or (ii) the ingress, egress, loading or unloading of cargo or personnel or any presence on any premises, related to this Agreement (whether land, building, vehicle, platform, vessel or otherwise) owned, operated, chartered, leased, used, controlled or hired by Company Group or Contractor Group; and expressly including any and all Claims actually or allegedly caused by any negligence, fault or strict liability (of whatever nature or character) of Contractor Group or any other person whether or not preceding the execution of this Agreement. IT IS THE EXPRESS INTENTION OF THE PARTIES, BOTH COMPANY AND CONTRACTOR, THAT THE INDEMNITY PROVIDED FOR IN THIS PARAGRAPH IS AN INDEMNITY BY COMPANY TO INDEMNIFY AND PROTECT CONTRACTOR GROUP FROM THE CONSEQUENCES OF CONTRACTOR'S OWN NEGLIGENCE, FAULT OR STRICT LIABILITY, WHETHER THAT NEGLIGENCE, FAULT OR STRICT LIABILITY IS THE SOLE, JOINT OR CONCURRING CAUSE OF THE INJURIES OR DEATH OR PROPERTY DAMAGE, PROVIDED, HOWEVER, THAT COMPANY SHALL NOT BE LIABLE TO INDEMNITEE TO THE EXTENT SUCH CLAIM IS CAUSED BY OR RESULTS FROM INDEMNITEE'S WILLFUL MISCONDUCT.

**The Underlying Lawsuit**

8. In 2017, Transwood and EP Energy, among others, were named in a lawsuit filed in the 218th Judicial District Court of La Salle County, Texas, Case No. 17-04-00078-CVL, styled *Beverly A. Allen v. FTS International, Inc; FTS International Services, LLC; EP Energy E&P Company, LP; Transwood Carriers; Transwood Carriers, Inc; Transwood Logistics, Inc; Hugo Castelan; and J&R Valley Oilfield Services, Inc.* (the "Underlying Lawsuit").

9. In the Underlying Lawsuit, Plaintiff Beverly Allen alleged that on or about January 4, 2016, she suffered personal injuries while working on the Ritchie Farms Well Site (operated by EP Energy) in La Salle County, Texas.

10. According to the Second Amended Petition filed in the Underlying Lawsuit, Ms. Allen delivered sand for use in EP Energy's fracking operation.

11. Based on information and belief, a Transwood subcontractor was responsible for bringing Ms. Allen onto the well site.

12. Based on information and belief, during the course of accomplishing her work at the well site, Ms. Allen was "placed under the control of" EP Energy "in the manner of performing [her] services," such that she became EP Energy's "special or borrowed employee." *See Francis v. Johnson*, 777 S.W.2d 462, 464 (Tex. App.—El Paso 1989, pet. denied).

13. Ms. Allen alleged that while she was on the premises, "the well site was unreasonably dangerous due to the presence of mud caused by heavy rains." Ms. Allen further alleged that this fact was "communicated to representatives of the OPERATOR Defendants [including EP Energy] to request that the site be cleaned up with loaders prior to continuing with the work." However, EP Energy allegedly ignored this communication, and work continued at the well site.

14. As a result, Ms. Allen alleged that "she slipped and fell due to the mud covering the working equipment and hoses that were used to deliver the fracking sand," causing her to "sustain severe bodily injuries to her back and shoulder."

15. Transwood ultimately settled all of Ms. Allen's claims in the Underlying Lawsuit for a confidential amount.

**The Policy**

16. EP Energy is the named insured under CGL Policy No. JGH2002322, covering the period from July 1, 2015 to July 1, 2016 (the "CGL Policy").

17. The CGL Policy requires Gemini to pay the amounts that EP Energy becomes legally obligated to pay as damages because of "bodily injury" caused by an "occurrence," subject to the CGL Policy's $1 million per occurrence limit of liability.

18. The CGL Policy expressly covers "liability for damages … Assumed in a contract or agreement that is an INSURED CONTRACT, provided the BODILY INJURY or PROPERTY DAMAGE occurs after the execution of the contract or agreement."

19. The CGL Policy defines "insured contract" as "that part of any written contract or written agreement pertaining to [EP Energy's] business under which [EP Energy] assume[s] the liability of another party to pay for BODILY INJURY or PROPERTY DAMAGE to a third person or organization."

20. The CGL Policy defines "indemnitee" as "a person or organization that [EP Energy has] agreed under a written contract or written agreement to indemnify or hold harmless."

### Transswood is a Creditor Beneficiary Under the CGL Policy

21. The indemnity provision in the MSA created an enforceable obligation of EP Energy to indemnify Transwood against the Underlying Lawsuit.

22. As a result, the MSA is an Insured Contract under the CGL Policy.

23. Further, because the bodily injuries and/or property damage at issue in the Underlying Lawsuit occurred after the execution of the MSA.

24. Transwood qualifies as a creditor beneficiary of the CGL Policy and that Gemini is required to indemnify Transwood under the CGL Policy for any settlement of the Underlying Lawsuit. *See Argonaut Ins. Co. v. Rio Marine, Inc.*, No. H-19-2296, 2020 U.S. Dist. LEXIS 125403, at *12 (S.D. Tex. July 2, 2020).

25. In the alternative, Transwood is entitled to reimbursement from Gemini for the Settlement under the doctrine of equitable subrogation.

26. The MSA is an Insured Contract that obligated Gemini to indemnify Transwood for the Settlement of the Underlying Lawsuit.

27. Transwood was forced to pay the Settlement of the Underlying Lawsuit under a legal obligation.

28. Accordingly, the Settlement qualifies as a third-party debt that Gemini owes to Transwood. *See Argonaut*, 2020 U.S. Dist. LEXIS 125403, at *14.

## CAUSE OF ACTION
**(Declaratory Judgment – 28 U.S.C. § 2201 *et seq*.)**

29. Transwood incorporates all allegations in the foregoing paragraphs by reference as if set forth fully herein.

30. This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201, et seq., in which Transwood seeks a judicial determination of the respective rights and obligations of Transwood and Gemini with respect to an actual controversy concerning coverage under the CGL Policy for the settlement of the Underlying Lawsuit.

31. Upon information and belief, the CGL Policy is a valid and enforceable insurance contract for which all premiums have been paid.

32. All conditions precedent to coverage under the CGL Policy have been satisfied or waived.

33. The CGL Policy insures EP Energy's duty to indemnify Transwood for liabilities arising under the MSA, including the Underlying Lawsuit.

34. Transwood is an indemnitee under both the CGL Policy and the MSA.

35. The Underlying Lawsuit against Transwood sought damages for bodily injury by an employee of EP Energy, and EP Energy assumed Transwood's liability for those injuries in the MSA.

36. The MSA is an insured contract under the CGL Policy.

37. Pursuant to the CGL Policy, Gemini had a duty to indemnify Transwood against the liabilities at issue in the Underlying Lawsuit.

38. Transwood is a third-party beneficiary under the CGL Policy and, as such, may pursue a direct claim against Gemini for "insured contract" benefits. *See Argonaut*, 2020 U.S. Dist. LEXIS 125403, at *15.

39. Alternatively, Transwood is entitled to be indemnified for the Settlement of the Underlying Lawsuit under the doctrine of equitable subrogation. *Id.*

40. Accordingly, it is necessary and proper for the Court to declare the rights and obligations of Transwood and Gemini under the CGL Policy, and declaratory relief from this Court will resolve the aforementioned controversy.

41. An actual, justiciable controversy exists between Transwood and Gemini as to Gemini's obligation to indemnify Transwood for the Settlement entered in the Underlying Lawsuit.

42. Transwood seeks a declaration that Gemini has a duty to indemnify Transwood for the Settlement in the Underlying Lawsuit.

**PRAYER FOR RELIEF**

WHEREFORE, Transwood requests judgment against Gemini and in favor of Transwood for:

(i) a declaration that Gemini has a duty to indemnify Transwood for the Settlement entered in the Underlying Lawsuit;

(ii) all reasonable and necessary attorney's fees and expenses incurred by Transwood in this matter;

(iii) all costs incurred to pursue its coverage rights; and

(iv) pre-judgment and post-judgment interest at the maximum allowable rate.

Respectfully submitted,

**REED SMITH LLP**

By: */s/ J. James Cooper*

REED SMITH LLP

J. James Cooper
Tex. I.D. No. 04780010
jcooper@reedsmith.com
811 Main Street, Suite 1700
Houston, Texas 77002
Telephone: 713.469.3800
Facsimile: 713.469.3899

Dominic I. Rupprecht (*pro hac vice forthcoming*)
drupprecht@reedsmith.com
Zachary S. Roman (*pro hac vice forthcoming*)
zroman@reedsmith.com
225 Fifth Avenue
Pittsburgh, Pennsylvania 15222
Telephone: 412.288.3367
Facsimile: 412.288.3063

*Attorneys for Plaintiff Transwood Carriers, Inc.*